OPINION
Defendant-appellant Jeffrey Rooney ("defendant") appeals the jury verdict finding him guilty of aggravated robbery in violation of R.C. 2911.10, aggravated burglary in violation of R.C. 2911.11, and felonious assault in violation of R.C. 2903.11.
A jury trial commenced on January 20, 1998. The following testimony was received by the jury. The victim was called to testify as a witness on behalf of plaintiff-appellee State of Ohio. He testified Paul Solnick and Roger Winkler entered his home/business. Once inside, the two beat the victim with a crow bar and a baseball bat and then took him to the basement. Thereinafter, defendant arrived on the scene. Solnick, Winkler, and defendant proceeded to duct tape the victim to a chair. Defendant took a baseball bat and started striking the victim on the head, neck, and shoulders. The three men then burglarized the home, looking for drugs. After Solnick, Winkler, and defendant finished burglarizing the house they left. The victim freed himself and called the police. The victim also received two phone calls from friends. He told both friends the details of the assault.
The first friend testified the victim told him that "he had just got the shit kicked out of him" and that defendant and two other guys did it. The second friend testified the victim informed him that "[defendant] and a couple of his buddies just beat me with a crow bar and I think I am dying."
Winkler testified on behalf of the state and corroborated the victim's testimony, including the fact that defendant struck the victim with a baseball bat. However, he also testified during cross-examination that immediately after his arrest for this crime he informed the police he did not see defendant beat the victim. Winkler admitted the only fact that changed from his post-arrest statement until the trial was the fact that defendant struck the victim. Winkler stated further he and Solnick did not discuss their plan to go over to the victim's house with defendant prior to doing so. He also said the reason they went over to the victim's home was to look for cocaine and collect a debt. Winkler concluded by stating he had not received any special consideration or deals from the state in exchange for his testimony.
Defendant testified on his own behalf. He said a few years prior to this incident he and the victim were in business together selling marine aquarium equipment and also selling cocaine. He said at the time of the assault he was landscaping for Solnick's company and Winkler was the foreman. On the day of the assault, defendant stated he just followed Solnick and Winkler over to the victim's house. After arriving, the other two went into the victim's house and then 15-20 minutes later, defendant was called in by Solnick. He said he saw the victim taped to a chair and saw Solnick and Winkler hit the victim with a crow bar and baseball bat. He also stated he neither struck the victim nor duct taped him to the chair. However, defendant admitted he searched through the victim's home and found cocaine. He finished his testimony by saying he participated in the crime because he was afraid Solnick and Winkler would kill him. On cross-examination, defendant admitted he had been convicted on two previous occasions of possession of cocaine.
After the guilty verdict was returned defendant timely filed his notice of appeal. He now submits five assignments of error. His first assignment of error states as follows:
 APPELLANT WAS DEPRIVED OF HIS CONSTITUTIONAL RIGHT TO CONDUCT REASONABLE CROSS-EXAMINATION.
First, defendant argues the trial court committed prejudicial error by restricting his efforts to cross-examine the victim regarding the truthfulness of a statement he made. The testimony to which the defendant refers is that the victim told the jury he did not review a statement he gave to the police two to three weeks after the incident. However, at a side-bar, the state revealed the victim had actually reviewed the statement. Defendant complains the trial court interrupted his cross-examination of the victim by not allowing him to pursue this matter regarding the truthfulness of the victim's testimony that he did not review the statement. He maintains disallowing this cross-examination of the victim precluded him from impeaching the victim's credibility.
The record indicates the victim stated he did not review his prior statement. A side-bar discussion was had and the following exchange occurred between the trial court, defense counsel, and prosecutor:
"THE COURT: Is there a statement?
 "MR. MAJER: Yes. I'm going to give it to him. So the record is clear, I don't know if he understood the question you asked him. I have given him the statement to look at just so you know.
 "THE COURT: You read it first and tell me if you find any material inconsistencies. Once you point them out to me, I'll tell you if I agree.
"MR. TRENOFF: Just a few omissions.
"THE COURT: No material inconsistencies?
"MR. TRENOFF: No."
After this exchange, defense counsel resumed cross-examining the victim and voluntarily questioned him about another topic. This issue arose a second time, when the victim again denied reviewing the statement before testifying. This time defense counsel asked for the statement and then asked for a second sidebar discussion. The trial court did not allow defense counsel to question the victim about the statement and did not grant defense counsel a side-bar.
The record reveals that defense counsel reviewed the statement and admitted there were no material inconsistencies between the prior statement and victim's trial testimony. Moreover, the prosecutor admitted giving the victim the statement to review. He also said he did not think the victim understood the question about having reviewed the statement prior to testifying. After conceding there were no inconsistencies, defense counsel voluntarily chose to cross-examine the victim about another topic. A short time later, the victim again denied reviewing the statement. This time the trial court instructed defense counsel to move on.
The only prejudice defendant complains of is the fact that the victim stated he did not review the statement. There are no substantive, material inconsistencies between the victim's prior statement and trial testimony. Defense counsel reviewed the statement and conceded there were no inconsistencies. Moreover, it appears from the record the victim may not have understood the question posed to him in light of the prosecutor's comment that he had just previously given the victim the statement.
"The scope of cross-examination and the admissibility of evidence during cross-examination are matters which rest in the sound discretion of the trial judge." O'Brien v. Angley (1980),63 Ohio St.2d 159, 163. An abuse of discretion involves more than an error in judgment. It implies that the court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217. We find the trial court did not abuse its discretion in disallowing defense counsel from cross-examining the victim about reviewing his prior statement. Even if the trial court did err in not allowing this cross-examination, such error was harmless in light of the fact that the questioning did not involve a material or substantive part of the victim's testimony. State v. Brown (1992), 65 Ohio St.3d 483.
Second, defendant argues he was limited in his cross-examination of Winkler. He claims he was prohibited from questioning Winkler about whether Winkler received any deals or arrangements with the state in exchange for testifying against defendant.
The record indicates defendant vigorously examined Winkler pertaining to whether he made any deals with the state. In response to each question, Winkler stated he did not receive any deals. Winkler also said he asked for immunity for testifying, but was denied, and he had discussions with the state about a possible deal, but no deal was consummated. After Winkler denied several times he had any deals, defense counsel continued to question him about the existence of such a deal. It was at this point that the trial court instructed defense counsel to move on.
Defendant was in no way limited in his questioning of Winkler about any deals he made with the state. In fact the record reveals the contrary. Defense counsel questioned Winkler repeatedly about the existence of a deal. The trial court only interrupted after defense counsel returned to the same line of questioning he had just concluded. We find the trial court did not abuse its discretion by instructing defense counsel to move on to another topic of cross-examination. Blakemore, supra.
Accordingly, defendant's first assignment of error is overruled.
Defendant's second assignment of error states as follows:
 THE TRIAL COURT COMMITS PREJUDICIAL ERROR IN ADMITTING A HIGHLY PREJUDICIAL TRANSCRIPT (STATE'S EXHIBIT #40) CONTAINING UNRELATED AND UNPROVED HEARSAY OF OTHER CRIMINAL ACTS, WRONGS AND CONDUCT OF BOTH APPELLANT AND OTHERS.
Defendant claims the trial court erred in admitting state's exhibit #40. He claims this exhibit, a transcript of an interview between a Detective Moore and Winkler, consisted of hearsay and other crimes testimony which should not have been admitted. He also argues the transcript referred to this incident as being planned and that he was a part of this plan when, in actuality, he claimed he was unaware of Winkler and Solnick's intentions to harm the victim until he entered the victim's home. Defendant contends the trial court should have determined the transcript was inadmissible pursuant to Evid.R. 612 and because it did not, he was prejudiced as a result.
The state called Winkler as a witness and during direct-examination asked him about a statement he gave to Detective Moore after the beating. Winkler said the statement he gave to Moore was "more or less a generalization" and he was trying to "minimize" the incident when he gave the statement. On cross-examination, Winkler was questioned about the statement and he stated his present testimony was different from what he said in the earlier statement in only one aspect — in the statement he stated defendant did not strike the victim when he testified at trial that he then believed defendant did strike the victim. In order to counter this testimony, defendant called Moore as a witness. On direct examination, Moore was questioned about the statement he took from Winkler. Moore said he remembered taking the statement but not specifically. Moore was provided with the transcript and refreshed his memory. During cross-examination, Moore stated the questions posed to Winkler were general questions. On re-direct, Moore conceded the question whether defendant struck the victim was not a general question, but was specific.
After the close of all the evidence, a discussion was held off the record where defendant objected to the admission of the transcript, i.e.; state's exhibit #40. Defendant claimed the transcript was filled with hearsay and other unsupported evidence and thus only certain portions of it should be admitted. The trial court considered this argument and admitted the exhibit, stating defendant "opened the door" with "the question about being specific or general."
The admissibility of evidence is within the sound discretion of the trial court. State v. Davis (1988), 49 Ohio App.3d 109. In addition, "a writing used to refresh [a] witness's recollection is not admitted into evidence unless admission is requested by the adverse party, and in any event had no substantive evidentiary significance." Dayton v. Combs (1993), 94 Ohio App.3d 291
Here, Moore was the final witness to testify and was called on behalf of defendant. Defendant asked Moore four questions based on specific references to the transcript. These questions involved whether Winkler stated defendant participated in taping the victim to the chair and whether Winkler saw defendant strike the victim. The state asked only one specific question about the transcript. On re-direct, defendant again asked Moore a question regarding whether his question to Winkler about defendant striking the victim was specific. Moore conceded the question was specific.
We find the trial court did not abuse its discretion in admitting the transcript. The state requested admission of the transcript. In addition, the transcript had no substantive evidentiary significance. Moore's entire testimony concerning the transcript repeated earlier testimony by Winkler. Certain portions of Moore's testimony concerned his own opinion and were not repetitive, but this testimony did not involve substantive evidentiary facts. Moreover, defendant opened the door to this line of evidence by asking Moore questions based on the transcript and by asking about the generality or specificity of the testimony in the transcript. Accordingly, defendant's second assignment of error is overruled.
Defendant's third assignment of error states as follows:
 IT IS PLAIN ERROR COMMITTED BY THE TRIAL COURT NOT TO GIVE AN "OTHER ACTS" INSTRUCTION IN VIEW OF ADMITTING STATE'S EXHIBIT #40.
Defendant argues the trial court erred by not giving the jury an "other acts" limiting instruction regarding state's exhibit #40. He claims this exhibit detailed numerous uncharged criminal acts and an unsubstantiated motive. Defendant maintains without the admission of the exhibit the jury had no reliable evidence upon which to convict him. Thus, he claims the outcome would have been different without its admission.
A review of the discussion between the trial court, defense counsel, and the prosecutor and the instructions given to the jury, reveals defense counsel failed to ask the court to give a limiting instruction regarding exhibit #40 and other acts. Therefore we must proceed under a plain error review. The Ohio Supreme Court has held that notice of plain error is to be taken with utmost caution and only in exceptional cases to prevent a manifest miscarriage of justice. State v. Kobi (1997), 122 Ohio App.3d 160,177. Reversal is warranted under this standard only when the outcome of the trial clearly would have been different without the alleged error. Id.
Because of the other evidence and testimony in this case, defendant has been unable to show that the outcome of the trial would have been different if the trial court had given a limiting instruction. Defendant's fourth assignment of error is overruled.
Defendant's fourth assignment of error states as follows:
 THE PROSECUTOR ENGAGED IN PROSECUTORIAL MISCONDUCT THEREBY DENYING APPELLANT'S RIGHT TO A FAIR TRIAL UNDER THE FEDERAL AND STATE CONSTITUTIONS.
First, defendant argues the prosecutor engaged in misconduct when he asked Winkler if he saw defendant do anything. Winkler responded to the question by stating he saw defendant hit the victim a couple of times with a baseball bat. Defendant bases his argument for misconduct on the prosecutor's prior knowledge of Winkler's post-arrest statement where Winkler said he did not see defendant strike the victim. Defendant claims the prosecutor should not have asked Winkler these questions because he knew about Winkler's prior denial of this fact. Defendant maintains the prosecutor's question was misleading and is akin to suborning perjury. He also claims the prosecutor's attempt to characterize the post-arrest statement as a mere generalization was extremely prejudicial and warranted a reversal. Regarding this last argument, defendant refers to the following questioning of Winkler and questioning of Detective Moore, who took Winkler's post-arrest statement. Defendant claims both these instances are attempts to mislead the jury about Winkler's inconsistent testimony.
The following dialogue refers to the prosecutor's direct examination of Winkler that defendant complains about:
 "Q. After these words were uttered, did you observe Rooney do anything?
"A. Yeah.
"Q. What?
"A. I mean he hit him a couple of times.
"Q. What did he hit him with, if anything?
"A. A wooden ball bat.
"Q. Now, did you talk to a detective about this case?
"A. Yes, I did.
"Q. You gave that detective a statement, correct?
"A. Yes, I did, sir.
 "Q. In that statement, did you mention that Rooney had hit this man with a ball bat?
 "A. In the statement — I had a chance to read the statement that I made, which was more or less a generalization. As far as, you know, being specific about certain roles, sir, I said I think he did or — and then I came back and said he didn't due to the fact that I was basically minimizing everything. That was my third case, I believe, that day out of disgust. I already went through arson, North Royalton, robbery, which is 11 felony ones, and this is the third case I was talking about."
Defendant complains about the prosecutor's questioning of Detective Moore. The prosecutor asked Moore if the questions he asked Winkler were general or specific. Moore responded they were "[g]eneral questions." On redirect examination, defense counsel was able to get Moore to admit that the question to Winkler concerning whether defendant struck the victim was a specific question.
The test for prosecutorial misconduct is whether remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused. State v. Smith (1984),14 Ohio St.3d 13, 14-15.
A careful review of the record reveals none of the prosecutor's questions were improper. The prosecutor merely asked Winkler if he saw defendant strike the victim. There is no evidence of foul play or coercion on the part of the prosecutor. Winkler simply testified to what he saw. The prosecutor then asked Winkler about the post-arrest statement he made to a police detective. The question was not leading, or misleading, and it did not include any reference to generalizing. Winkler is the one who stated the post-arrest statement consisted of generalizations and minimizing. The prosecutor never mentioned any of these words. Regarding Detective Moore, the prosecutor merely asked him his opinion of the questions he asked Winkler. Moore said they were general questions. Any prejudice resulting from this question was cured when defense counsel had Moore admit the question to Winkler was a specific question and not a general one. This type of direct examination and cross-examination of witnesses about the same issue did not involve misconduct but was rather an unavoidable part of the adversarial process in which each side attempted to elicit the most favorable testimony. We find no evidence of prosecutorial misconduct regarding this argument.
Second, defendant argues the prosecutor acted improperly by divulging a sealed conviction record. He claims this conviction the prosecutor referred to is inadmissible pursuant to R.C.2953.35 which says an officer of the state may not divulge any information concerning a conviction which was sealed or expunged. Defendant claims the conviction was inadmissible because it was a 1986 conviction of possession of cocaine which was outside the ten year window of admissibility.
James Canepa testified as a character witness on behalf of the defendant. He stated defendant was like a brother to him and he had always known defendant as being very truthful. Canepa corroborated defendant's story regarding this incident and said he had no reason to doubt defendant's version of the facts. On cross-examination, Canepa said he was aware of defendant's two prior convictions for possession of cocaine and he was also aware that one of the co-defendants in the 1986 case was his brother, Peter Canepa. During a discussion between the trial court, defense counsel, and the prosecutor, the prosecutor admitted he knew Peter Canepa's co-defendant conviction had been expunged, but he questioned James Canepa about it because he thought it was proper under Evid.R. 609.
R.C. 2953.32 (E) states:
 "In any criminal proceeding, proof of any otherwise admissible prior conviction may be introduced and proved, notwithstanding the fact that for any such prior conviction an order of sealing previously was issued pursuant to sections 2953.31 to 2953.36 of the Revised Code."
This code section applies to the present case and allows cross-examination on Peter Canepa's expunged conviction if the conviction was admissible in the case. If the expunged conviction was not admissible at trial then this code section does not apply and error arises.
Defendant complains Evid.R. 609 (B) excludes Peter Canepa's conviction because more than ten years has not elapsed since the date of the conviction. What defendant fails to realize is that Evid.R. 609 (B) is inapplicable to this conviction because the rule applies to convictions of the witness. The conviction at issue was not James Canepa's, it was his brothers'. Thus, the rule does not apply to the questioning of James Canepa. As a result, the conviction was admissible at trial and R.C. 2953.32
(E) applies. Accordingly, defendant's second argument fails.
Third, defendant complains the prosecutor's attack on defendant's sixth amendment right to have assistance of counsel for his defense is prejudicial error. Defendant argues the prosecutor improperly commented on defendant's right to have a trial, to confront witnesses against him, and to have assistance of counsel. More specifically, defendant contends the prosecutor's comments were prejudicial because they characterized defendant as a liar who had the opportunity since the commission of the crime to "craft" a story and exculpate himself.
The subject exchange between defendant and the prosecutor is as follows:
 "Q. Okay. Do you think that gave the victim any time to make this whole story up when he told them that you and two guys beat him up? Did that give him an opportunity to make up any story about this?
"A. I'm sure he had an opportunity.
 "Q. How about your opportunity? You sat through all the testimony so far, you sat through every witness, and you have been able to sit there with your lawyer and craft this defense; isn't that correct?"
Essentially, defendant is arguing the prosecutor made improper comments. He claims the above exchange involved the prosecutor making comments about his constitutional right to have a trial, to confront witnesses, and have assistance of counsel. Even a generous interpretation of the above exchange does not support defendant's conclusion that this exchange involved comments on his constitutional rights. Moreover, this exchange does not indicate the prosecutor was commenting on defendant's defense theory. Throughout the entire trial, defendant's strategy had been to deny duct taping and striking the victim, and to admit to other involvement only because he was forced into the crime by Winkler and Solnick. This question by the prosecutor merely asked whether defendant had the opportunity to create a defense. We cannot discern any specific comments about defendant's defense strategy from the above exchange. Thus, we find the prosecutor did not act improperly or make any prejudicial comments on defendant's constitutional rights.
Fourth, defendant argues the prosecutor caused prejudicial error by repeatedly expressing his personal beliefs and opinions as to the credibility of witnesses and as to his guilt. In support, defendant cites to eighteen portions of the transcript where the prosecutor, in his closing argument, stated "I think" or "I don't think." He claims these citations were improper comments on witness credibility and his guilt. As a result, he claims the jury was mislead and he was prejudiced.
A prosecutor has wide latitude to comment during closing strategy, however the prosecutor cannot intentionally mislead the jury by means of improper remarks or insinuations. City of Sidneyv. Walters (1997), 118 Ohio App.3d 825. In addition, where the prosecutor's personal opinions are predicated upon the evidence they are deemed not to be prejudicially erroneous. State v.Reynolds (1998), 80 Ohio St.3d 670.
A review of the comments defendant refers to reveals only one of the eighteen involved the prosecutor actually expressing a personal opinion. The prosecutor was commenting on defendant's character witness and stated, "I don't think he was lying. I don't think that man came into court and lied. I do think that he was fooled by this man, this guy over here." This comment was based upon the testimony of the character witness and is therefore not prejudicially erroneous. However, even construed in favor of defendant, this comment was not prejudicial and it does not deprive defendant of a fair trial in light of the fact that the material evidence in the case came from other witnesses rather than this character witness. State v. Landrum (1990),53 Ohio St.3d 107.
Fifth, defendant argues the prosecutor violated his right to a fair trial by using prior cocaine convictions to assault his character and establish his propensity towards similar conduct. He claims this is indicative of the prosecutor's attempt to assassinate his character and associate him with bad acts such as the prior convictions, associating with Peter Canepa who was convicted of cocaine possession, and admitting other crimes and acts contained in State's exhibit #40. Defendant maintains he did not receive a fair trial because of these acts.
On direct examination, defense counsel questioned defendant about whether he had any prior convictions. Defendant admitted he had been convicted on two prior occasions for possession of cocaine. Defendant now complains the prosecutor improperly questioned him about these prior convictions. Once defense counsel questioned defendant about his prior convictions, this opened the door for the prosecutor for similar questioning on cross-examination. It is well-settled that "[a] party will not be permitted to take advantage of an error which he himself invited or induced. * * * " Hal Artz Lincoln-Mercury, Inc. v. Ford MotorCo. (1986), 28 Ohio St.3d 20. Since defendant revealed he had prior convictions during direct examination, he cannot now assign as error the prosecutor's reference to them since he opened the door with his direct testimony. Regarding the other evidence defendant complains of, we previously stated that State's exhibit #40 and the prior conviction of Peter Canepa were properly admitted. Therefore, there is no evidence that defendant failed to receive a fair trial.
Accordingly, defendant's fourth assignment of error is overruled.
Defendant's fifth assignment of error states as follows:
 PREJUDICIAL ERROR OCCURS WHEN THE TRIAL COURT ADMITS INADMISSIBLE, HIGHLY DAMAGING HEARSAY TESTIMONY.
Defendant's first argument regarding this assignment of error concerns the admission of hearsay evidence involving a plan or conspiracy to collect a debt from the victim. Defendant cites the following two exchanges as improper hearsay evidence, this first exchange is between the prosecutor and Winkler:
"Q. Whose idea was it to go to Cory Minion's aquarium shop?
"A. Paul Solnick.
"Q. Why did you go there?
 "A. He [Paul Solnick] has asked me in about a two second notice to go there to cover his back type situation. He was going to go over there and collect money that he was owed and asked me if I would ride with him and make sure nothing happens to him. * * * Then Paul had suggested we take him to the basement away from the windows, and that.
 "Q. All right. Why would you want to move him from the window area?
 "A. I mean at the time, you know, you don't want witnesses, or whatever.
"Q. So you yourself and Paul took him to the basement?
"A. Right."
The second exchange defendant complains of occurred during the victim's direct examination:
 "A. * * * They kept telling me how they [Solnick and Winkler] were going to do it, their plans and alibis, the why, * * * they * * * started telling me more of their plan their plan * * * just going over this plan * * * Paul said to Roger to take these gloves because we don't want to leave any fingerprints. * * * Finally Paul told Roger that he was going to go upstairs and do something, make some calls or something."
Defendant claims this testimony was inadmissible hearsay and linked him to crimes which were committed by others. He claims this evidence prejudices him because it associates him with a plan or conspiracy that Winkler and Solnick were involved in to either collect a debt or collect cocaine.
Defendant failed to object while this testimony was being elicited. Therefore, we must proceed under a plain error review.
Defendant's argument is without merit because he is attempting to pick and choose which evidence he believes should be admitted into evidence. Regarding the first quoted portion of the transcript, we do not see any references to defendant being involved in any planning. In fact, a close inspection of the transcript indicates Winkler testified that defendant was not cognizant of where they were going or why they were going to the victim's home prior to arriving there. Further, this exchange does not amount to hearsay because Winkler did not testify about any statements other than his own.
The second exchange concerning the victim's testimony relates to crimes committed by Solnick and Winkler before defendant entered the victim's home. It does not amount to inadmissible hearsay testimony. The victim was the witness to these crimes and was able to observe the actions and conversations of Solnick and Winkler. Clearly, this testimony is just factual testimony by a lay witness.
Defendant also argues he was prejudiced by the prosecutor's closing remark that "the crimes he's [defendant] not directly involved with he either aided and abetted or encouraged * * *. He is in for a penny, in for a pound. They all acted together." As stated previously, a prosecutor has wide latitude in making closing remarks and as long as the comments are based on the evidence admitted at trial there is no prejudice. Reynolds,supra. Winkler and the victim both testified to defendant's participation in the plan and detailed defendant's assault of the victim, and also detailed defendant's efforts to search for the cocaine in conjunction with them. The prosecutor's comment was not prejudicial because it was based on actual testimony given at trial.
Defendant also complains the trial court failed to properly instruct on "privilege" as required under the trespass subsection to aggravated burglary. Furthermore, he claims the trial court "antagonistically" argued on behalf of the state that defendant did not have any evidence to support his defenses of necessity, privilege, and duress. In support, defendant cites to the following statements made by the trial court:
 "I'm unsure as to what testimony, if any, was presented that would go to any of these. I don't see the evidence as having been elicited that supports this."
* * *
 "I heard the whole case, I don't know what evidence you submitted to make this defense a proper instruction."
* * *
 "But tell me what evidence says he did such that necessity becomes an issue."
* * *
 "There was no necessity for him to enter that property, none. You didn't put on any testimony that Paul came out to the truck that your client was in and said get your buns in that house and help us beat up Cory Minion or I'll kill you, your wife and kids. There was none of that."
* * *
 * * * there is no testimony that he [Appellant] felt that he was at harm at that moment."
These statements defendant cites to occurred during the trial court's discussion with defense counsel and, the prosecutor regarding the instructions that were to be given to the jury. We find no bias or prejudice emanating from these statements. The trial court was merely stating its reasoning for not expanding the jury instructions. Also, it should be noted the trial court did give an instruction privilege but defendant complains the instruction he desired was not given. Defendant does not cite to any persuasive authority or binding precedent regarding the jury instruction that he argues should have been given. A review of the present jury instructions does not reveal any error or prejudice or any evidence that the instructions were contrary to Ohio law.
Second, defendant argues he was denied a fair trial because the trial court allowed, as excited utterance pursuant to Evid.R. 803, the testimony of the victim's friends, Tom Cromes and Theodore Gullia. Defendant claims this testimony amounts to inadmissible hearsay and was prejudicial because it bolstered the victim's testimony. He contends the two friends testimony does not qualify as an exception to hearsay as an excited utterance because the victim's reflective processes were not "stilled" and were made with time for thought or reflection.
The court in State v. Dickerson (1977), 51 Ohio App.2d 255, held that a statement does not qualify as an excited utterance unless it concerns an event sufficiently startling to render normal reflective thought processes inoperative and is a spontaneous reaction to the occurrence of the event and not the result of reflective thought. The Staff Notes to Evid.R. 803 (2) list factors the court must consider in determining whether a statement qualifies as an excited utterance:
 "To qualify as an excited utterance consideration must be given to (a) the lapse of time between the event and the declaration, (b) the mental and physical condition of the declarant, (c) the nature of the statement and (d) the influence of intervening circumstances."
In the present case, the victim was beaten with a crowbar and a baseball bat. He was hit in all areas of his body including his head. He was then dragged into his basement, taped to a chair, and beaten again. The testimony of Cromes and Gullia indicates their calls to the victim were within about thirty (30) minutes of the conclusion of the beating. Cromes stated the victim "was upset, agitated. He didn't seem to have a real good focus. He was like mostly angry." Gullia testified he only spoke with the victim for eight to twelve seconds and the victim only told him defendant and his friends were the assailants. Gullia also stated he initially thought the victim was "kidding, " but the victim's voice sounded different to him, and the victim stated he was bleeding and about to die.
The lapse of time between the beating and the two phone calls was about thirty minutes, the victim was struck numerous times in the head and all over the body with a crowbar and baseball bat, both of the victim's conversations related to simply identifying defendant and the other assailants and the beating he endured, and there were no intervening events. Furthermore, the testimony of Cromes and Gullia coincides with the victims. Based on the foregoing, we find the victim's statements to Cromes and Gullia amounted to excited utterances and thus the trial court did not err in admitting their testimony as evidence. Defendant's fifth assignment of error is overruled.
Defendant's sixth assignment of error states as follows:
 APPELLANT'S CONVICTION FOR AGGRAVATED BURGLARY, AGGRAVATED ROBBERY AND FELONIOUS ASSAULT ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Defendant argues the record does not contain sufficient competent, credible evidence which would allow a rational jury to find guilt. In support, he claims there was no physical evidence and the state's case was predicated on the credibility of witness testimony which was undermined by several factors. These factors include: (1) the admission of prejudicial other acts, crimes, and wrongs contained in state's exhibit #40; (2) the improper admission of brutal criminal acts and hearsay "plans" of "co-conspirators" beyond the knowledge of defendant; (3) the acts of the trial court which foreclosed defendant's ability to expose perjury by a prosecuting witness, to expose "below board dealings" between the state and Winkler, and to present testimony regarding defendant's necessity/privilege/duress defense; and (4) the undermining of the verdict by improper character assaults, bolstering of testimony, and circumvention of the expungement statute by the prosecutor. After excluding these impermissible inferences, defendant claims all that is left is the inconsistent and perjurious testimony of Winkler and the victim.
It is well-settled law that a reviewing court will not reverse a conviction where there is substantial evidence upon which the trier of fact could reasonably conclude that all elements of an offense have been proven beyond a reasonable doubt. State v.Seiber (1990), 56 Ohio St.3d 4, 13. Moreover, in reviewing a claim that a conviction is against the manifest weight of the evidence, said conviction cannot be reversed unless it is obvious that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Garrow (1995),103 Ohio App.3d 368, 370-371. Also, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230.
R.C. 2911.01 Aggravated robbery states:
 "(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of following:
* * *
 "(2) Have a dangerous ordnance on or about the offender's person or under the offender's control."
R.C. 2911.11 Aggravated burglary states:
 "(A) No person by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with the purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:
 "(1) The offender inflicts, or attempts or threatens to inflict, physical harm on another."
R.C. 2903.11 Felonious Assault states:
"(A) No person shall knowingly:
 "(1) Cause serious physical harm to another or to another's unborn;"
A review of the record and transcript shows there was substantial evidence upon which the jury could rely. The victim's friends, Cromes and Gullia, both testified the victim identified defendant as one of the assailants who beat him approximately thirty minutes after the beating occurred. The victim testified defendant duct taped him, beat him with a baseball bat, and searched his house for drugs. Winkler, a co-assailant, corroborated the victim's testimony concerning the beating, robbery, and burglary. The physical evidence included a bloody shirt, bloody pants, duct tape, EMS run sheet, victim's medical records, and paper towels covered with blood. Defendant admitted to being at the scene and searching for drugs.
Based on the above-mentioned testimony and evidence, we find there was substantial evidence upon which the trier of fact could conclude that all elements of the offenses have been proven beyond a reasonable doubt. The trier of fact did not lose its way and create a manifest miscarriage of justice. Accordingly, defendant's sixth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E McMONAGLE. P.J., PATRICIA A. BLACKMON, J., CONCUR.
 ________________ JOHN T. PATTON JUDGE